lack of evidence about Brett's circumstances for the 16 months prior to the termination hearing.

Due to this insufficiency in the evidence, we reverse the county court's order terminating Brett's parental rights to Jacob, Madison, Megan, and Morgan, and remand the matter to the county court for further proceedings consistent with this opinion.

## V. CONCLUSION

Upon our review of the record, we conclude that the county court did not err in permitting the State to amend its motion to terminate Brett's parental rights or in failing to recuse itself from the termination proceedings. In addition, we conclude that there is clear and convincing evidence to demonstrate that the children have been in an out-of-home placement for 15 of the most recent 22 months pursuant to § 43-292(7). However, we also conclude that there is insufficient evidence to demonstrate that termination of Brett's parental rights is in the best interests of Jacob, Madison, Megan, and Morgan. Accordingly, we reverse the order terminating Brett's parental rights and remand the matter to the county court for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

---

Rafael Cervantes, appellant, v. Omaha Steel
Castings Co., appellee.
___ N.W.2d ___

Filed April 16, 2013.    No. A-12-210.

1. **Workers' Compensation: Appeal and Error.** In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong.
2. **Stipulations: Parties: Trial: Courts.** Stipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy.

3. **Stipulations: Parties.** Parties are bound by stipulations voluntarily made, and relief from such stipulations after judgment is warranted only under exceptional circumstances.

4. **Stipulations: Parties: Courts: Good Cause.** Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulation has been acted upon so that the parties could not be placed in status quo.

5. **Stipulations.** Stipulations cannot be contradicted by evidence tending to show the facts to be other than as stipulated.

6. **Pleadings: Waiver.** An admission made in a pleading on which the trial is had is more than an ordinary admission; it is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it, and therefore is a limitation of the issues.

7. **Pleadings: Evidence.** Judicial admissions must be unequivocal, deliberate, and clear, and not the product of mistake or inadvertence.

8. **Pleadings.** An admission in an answer does not extend beyond the intendment of the admission as clearly disclosed by its context.

Appeal from the Workers' Compensation Court: Thomas E. Stine, Judge. Reversed and remanded for further proceedings.

Timothy S. Dowd, of Dowd, Howard & Corrigan, L.L.C., for appellant.

Harry A. Hoch III, of Sodoro, Daly & Sodoro, P.C., for appellee.

Irwin, Moore, and Pirtle, Judges.

Pirtle, Judge.

## INTRODUCTION

Rafael Cervantes appeals from the award of the Nebraska Workers' Compensation Court filed February 22, 2012. The court rejected certain stipulations of the parties and found Cervantes was not permanently and totally disabled as a result of multiple scheduled member injuries. The court also found that Cervantes was entitled to vocational rehabilitation services from June 8, 2008, to July 21, 2011, but that he would not be entitled to services beyond that period of time.

## BACKGROUND

Cervantes was born in April 1958, and he does not read, write, or speak English. He attended school through the sixth

grade in Mexico, and his previous work experience included work as a field hand in Mexico.

In the United States, Cervantes worked for Omaha Steel Castings Co. (Omaha Steel). This job included picking up containers of food weighing greater than 10 pounds and required overhead lifting and reaching. The qualifications for Cervantes' position included the ability to work at a fast pace and lift up to 100 pounds.

On August 14, 2006, Cervantes was standing on a steel beam, suspended approximately 5 feet in the air. He slipped off the beam, and as he fell, his right arm was pulled, causing significant pain. On August 18, Cervantes was diagnosed with a "SLAP II tear of the superior labrum" in the right shoulder, and he was treated conservatively for his injury. On August 24, Cervantes was advised that in order to adequately treat the labrum tear, it would be appropriate for him to undergo surgery, which he elected not to undergo. Cervantes returned to work for Omaha Steel shortly after the accident, primarily using his left arm to perform his work duties.

Cervantes sought a second opinion from Dr. Kirk Hutton, who also recommended surgery on Cervantes' right shoulder, and Cervantes refused the treatment. On February 14, 2007, Dr. Hutton issued a report with his diagnosis of Cervantes' injuries, noting that if he did not have surgery, he had reached maximum medical improvement and sustained an 18-percent permanent partial impairment rating of his upper right extremity. Dr. Hutton set permanent work restrictions of "light work with lifting 20 pounds maximum and frequent lifting and/or carrying of objects weighing up to 10 pounds." He recommended that Cervantes "keep work below shoulder level and close to the body." Dr. Hutton stated Cervantes would need future medical care and treatment, including possible surgery, as well as "physical therapy and/or anti-inflammatory and pain medicines on occasion." On July 25, Dr. Hutton modified the permanent restrictions to include only "sedentary work, 10 pounds lifting maximum."

On November 8, 2007, Cervantes saw Dr. D.M. Gammel for pain in his left shoulder. Dr. Gammel noted that there was "no known specific injury," but that Cervantes did not have the use

of his right shoulder, as he needed surgery. Dr. Gammel also noted that Cervantes had been using his left shoulder exclusively, with increased pain and difficulty. He later diagnosed the injury as a "labral tear." On December 5, Cervantes saw another doctor for a left shoulder MRI, which showed a "[t]ear of superior labrum extending anterior to posterior consistent with Type 2 SLAP tear of the glenoid labrum."

Cervantes' final day of employment at Omaha Steel was January 16, 2008. He has not been able to perform any of the types of work he completed previously because of the restrictions caused by his injuries.

After an MRI on December 5, 2007, Dr. Hutton's February 27, 2008, "Progress Note" diagnosed Cervantes with "[b]ilateral shoulder SLAP lesions." Dr. Hutton prescribed "a sedentary work restriction keeping work below shoulder level and close to the body," with respect to the shoulder injuries.

Dr. Hutton's letter report on April 4, 2008, noted the current diagnosis for the left shoulder was a "SLAP II tear." Dr. Hutton could not say with a reasonable degree of medical certainty that the tear was caused by Cervantes' work activities, but the types of duties that Cervantes described certainly may have aggravated his condition causing it to become painful. He said Cervantes reported dealing with his right shoulder pain by overcompensating and using his left shoulder, subsequently developing pain. Dr. Hutton recommended surgery, which Cervantes refused, opting to treat his left shoulder more conservatively. Dr. Hutton noted Cervantes would need physical therapy and "continued anti-inflammatory usage" to treat both shoulders, and he recommended vocational training to help Cervantes get a job which did not require lifting, pushing, or pulling, because these activities would aggravate his shoulder conditions. He stated that if Cervantes elected not to have surgery on his left shoulder, he had reached maximum medical improvement and had sustained a 12-percent permanent partial impairment to each upper extremity.

On December 26, 2008, Dr. Hutton completed a medical questionnaire, diagnosing Cervantes with a left shoulder "SLAP II lesion." He stated the lesion was aggravated by Cervantes' work activities with Omaha Steel. He assigned

a 12-percent permanent impairment to Cervantes' left upper extremity "as a result of the work-related aggravation he sustained to a pre-existing left shoulder condition as a result of performing his work activities" for Omaha Steel.

Cervantes underwent vocational rehabilitation training from June 8, 2008, through July 21, 2011. During this period, and throughout the trial, Cervantes was not a legal resident of the United States, but he represented that he was in order to obtain vocational rehabilitation services.

Ted Stricklett, a vocational rehabilitation consultant, worked with Cervantes to assist with classes in English as a second language. In September 2010, Stricklett sent an e-mail to counsel stating, "If consideration is given to [Cervantes'] work restrictions per Dr. Hutton (Sedentary work while keeping work below shoulder level and close to his body) and if I were to assume vocational rehabilitation is unsuccessful, then it would be my opinion that . . . Cervantes would be competitively unemployable." On December 15, 2011, Cervantes underwent a psychological evaluation. The evaluation determined Cervantes' intellectual functioning is "borderline to low average." He is also functionally illiterate and not able to communicate effectively without the aid of an interpreter.

On July 21, 2011, Stricklett wrote a report stating that Cervantes was unsuccessful in his vocational rehabilitation and that it was still his opinion Cervantes was competitively unemployable. On the same day, Cervantes filed his petition alleging he sustained bilateral upper extremity injuries in an accident on August 14, 2006, arising out of and in the course of his employment with Omaha Steel. He also alleged he was entitled to compensation from the company.

Omaha Steel's answer stated:

> [Omaha Steel] admits that on August 14, 2006, [Cervantes] was an employee of . . . Omaha Steel . . . , and while employed on said date and while engaged in his duties of employment, he suffered an injury to both of his shoulders as a result of an accident arising out of and in the course of his employment . . . .

The answer also stated that the injury sustained to Cervantes' right shoulder and upper extremity was the result of being

struck by a piece of equipment and that he sustained an injury to his left shoulder and upper extremity "as a result of over-compensating for his related right shoulder/upper extremity injury." Further, the answer admitted Cervantes "sustained a 12% impairment to his left upper extremity and an 18% impairment to his right upper extremity as a result of the afore-mentioned accident and injuries."

A pretrial conference was held on January 5, 2012, and a pretrial order was issued on January 9. At the time of the pretrial conference, the parties stipulated to various facts which were reproduced in the court's award. These stipulations included Cervantes' employment with Omaha Steel, the dates of his employment, the amount of his wages, the payments he received for his injuries, his participation in vocational reha-bilitation, his immigration status, and the venue for this case. The pretrial order, filed January 9, specifically stated that "on August 14, 2006, [Cervantes] suffered injury by accident to his left arm and right arm, arising out of and in the scope of his employment."

A hearing before the Nebraska Workers' Compensation Court took place on January 17, 2012, and the issues were limited to whether Cervantes was permanently and totally disabled as a result of multiple scheduled member injuries; whether Cervantes was entitled to vocational rehabilitation services between June 8, 2008, and July 21, 2011; and, if he was not entitled to vocational rehabilitation, whether Omaha Steel was entitled to a credit for temporary total disability pay-ments made during that period of time.

In the award, filed February 22, 2012, the court rejected the parties' stipulation that Cervantes had sustained bilateral shoul-der injuries as a result of the August 14, 2006, work accident and determined Cervantes was not permanently and totally disabled under Neb. Rev. Stat. § 48-121(3) (Reissue 2010). The court also found Cervantes was entitled to vocational reha-bilitation services between June 8, 2008, and July 21, 2011, but was not eligible for further vocational rehabilitation from the time of the order. Cervantes filed his notice of appeal on March 8, 2012.

## ASSIGNMENTS OF ERROR

Cervantes assigns the Workers' Compensation Court erred in rejecting the parties' stipulation that Cervantes sustained multiple scheduled member injuries as a result of the August 14, 2006, work accident. Cervantes also assigns error to the finding that he was not rendered permanently totally disabled as a result of the injuries, pursuant to § 48-121(3).

## STANDARD OF REVIEW

[1] In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong. See *Spitz v. T.O. Haas Tire Co.*, 283 Neb. 811, 815 N.W.2d 524 (2012).

## ANALYSIS

*Rejection of Parties' Stipulations.*

In this case, the parties stipulated to various facts at the pretrial hearing on January 5, 2012, and these stipulations were reproduced in the court's pretrial order filed on January 9. On January 17, the parties presented evidence specifically targeted to address the issues of whether the injuries, stipulated to at the pretrial hearing, rendered Cervantes permanently and totally disabled and whether Cervantes should be entitled to vocational rehabilitation as a result of these injuries. At trial, the parties did not address whether Cervantes' injuries arose out of a single work-related incident, because this fact had been stipulated to prior to trial.

The court's award rejected the stipulation, finding the medical evidence contradicted the stipulation that the injury to Cervantes' left shoulder arose out of and in the scope of his employment with Omaha Steel. As a result, the court found that Cervantes was not permanently and totally disabled as a result of multiple scheduled member injuries.

[2,3] The Nebraska Supreme Court has stated that stipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the

cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy. *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006); *In re Estate of Mithofer*, 243 Neb. 722, 502 N.W.2d 454 (1993). The Supreme Court has also stated that parties are bound by stipulations voluntarily made and that relief from such stipulations after judgment is warranted only under exceptional circumstances. *Id*.

In this case, the stipulations, voluntarily made by the parties, who were represented by counsel, were not respected and enforced by the court, and there is no evidence that the court's decision was motivated by a finding that the stipulations were contrary to good morals or public policy. Instead, the court chose to invalidate the stipulations after independently evaluating the evidence and determining the evidence contradicted the stipulations.

Omaha Steel argues that "'there is no law in Nebraska which requires a court to accept a stipulation,'" brief for appellee at 12-13, quoting *Fordham v. West Lumber Co.*, 2 Neb. App. 716, 513 N.W.2d 52 (1994). However, this specific reference was related to the calculation of the injured party's weekly wage, and the court noted it may decline to enforce a stipulation where good cause is shown for doing so. In *Fordham*, the court declined to enforce the stipulation where it found the stipulation either was meant to be inapplicable to the calculation of permanent disability or was improvidently made and the interests of justice and fairness required it to be ignored.

[4] The Nebraska Supreme Court has stated courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in status quo. *Shipler, supra*. See, also, *Kuhlmann v. Platte Valley Irr. Dist.*, 166 Neb. 493, 89 N.W.2d 768 (1958).

Throughout the case, neither party disputed that Cervantes' injuries to both shoulders arose out of the same incident. Cervantes' petition stated that he sustained "bilateral upper extremity injuries," and Omaha Steel's answer admitted that "he suffered an injury to both of his shoulders as a result of

an accident arising out of and in the course of his employment by . . . Omaha Steel." The parties' pretrial stipulation is in line with these statements, and the parties' presentation of evidence at trial is as well. The court's decision to reject the stipulation after trial prejudices the parties, especially Cervantes, as he would have had the opportunity to present evidence of the injury to both shoulders at trial, had it been a disputed issue.

[5] Stipulations cannot be contradicted by evidence tending to show the facts to be other than as stipulated. See *Kuhlmann, supra*. Even if the court's interpretation of the evidence was correct, we find it was clearly wrong to reject the stipulation agreed to and relied upon by the parties in this case.

[6-8] In addition, the Supreme Court has stated:

> "[A]n admission made in a pleading on which the trial is had is more than an ordinary admission; it is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it, and therefore is a limitation of the issues."

*City of Ashland v. Ashland Salvage*, 271 Neb. 362, 369, 711 N.W.2d 861, 868 (2006). Judicial admissions must be unequivocal, deliberate, and clear, and not the product of mistake or inadvertence. *City of Ashland, supra*; *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998). This court has further recognized that an admission in an answer "does not extend beyond the intendment of the admission as clearly disclosed by its context." *Robison v. Madsen*, 246 Neb. 22, 29, 516 N.W.2d 594, 599 (1994) (emphasis omitted).

Omaha Steel's answer admitted Cervantes suffered injuries to both shoulders as part of a single, work-related accident. The answer is unequivocal, deliberate, and clear regarding how the injuries occurred, and there is no evidence that the admission was made inadvertently or by mistake. The evidence shows the parties were in agreement on the limited issue of the causation of Cervantes' injuries when they created the stipulation. We find Omaha Steel's statement of how the injuries occurred is a judicial admission and is further evidence that the court incorrectly rejected the parties' stipulation.

*Permanent and Total Disability.*

Having determined that the Workers' Compensation Court was clearly wrong in rejecting the stipulation of the parties, we must address the remaining issue of whether Cervantes was permanently and totally disabled as a result of the work accident.

After trial, the court was not persuaded that the work accident caused the injuries to both the right and left shoulders and upper extremities. Therefore, the court could not find Cervantes was totally and permanently disabled under § 48-121(3), which requires the loss of use to be caused by one accident. However, if the court had accepted the parties' stipulation that the accident was the cause of the injuries to Cervantes' right and left shoulders, the court could come to a different conclusion regarding the extent of Cervantes' disability.

Whether Cervantes is permanently and totally disabled is a question of fact which must be resolved by the Workers' Compensation Court. Therefore, we remand this cause for a resolution of the issue and direct the court to make a decision regarding Cervantes' disability in light of the parties' stipulation and on the existing record.

## CONCLUSION

We find the decision of the Nebraska Workers' Compensation Court was clearly wrong in rejecting the stipulation of the parties regarding the nature of Cervantes' injuries, and we reverse, and remand for further proceedings. The Workers' Compensation Court is directed to determine whether, in light of the parties' stipulation, and on the existing record, Cervantes is permanently and totally disabled as a result of the accident which occurred during the scope of his employment with Omaha Steel.

Reversed and remanded for further proceedings.