IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

CERVANTES V. OMAHA STEEL CASTINGS CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RAFAEL CERVANTES, APPELLANT,
V.
OMAHA STEEL CASTINGS CO., APPELLEE.

Filed April 15, 2014.    No. A-13-669.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Reversed and remanded with directions.

Timothy S. Dowd, of Dowd, Howard & Corrigan, L.L.C., for appellant.

Harry A. Hoch III, of Sodoro, Daly, Shomaker & Selde, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and MOORE and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

Rafael Cervantes appeals from an order on remand of the Nebraska Workers' Compensation Court which found that he was not permanently totally disabled as a result of the multiple scheduled member injuries he sustained in a single work-related accident. We conclude that the trial court was clearly wrong in finding that Cervantes was not permanently totally disabled as a result of his injuries. We reverse the trial court's order on remand, and remand with directions to enter an order finding that Cervantes is permanently totally disabled.

## BACKGROUND

This case is before us for a second time. The first time it was before us, the trial court had rejected a stipulation of the parties and found that Cervantes was not permanently totally disabled. See *Cervantes v. Omaha Steel Castings Co.*, 20 Neb. App. 695, 831 N.W.2d 709 (2013). We reversed, and remanded the matter to the trial court, instructing the court to determine Cervantes' disability in light of the parties' stipulation and on the existing record. On

remand, the trial court again found that Cervantes was not permanently totally disabled. Cervantes is now appealing from the court's order on remand.

Cervantes was injured in a work-related accident on August 14, 2006, while employed by Omaha Steel Castings Co. (Omaha Steel). On July 21, 2011, Cervantes filed a petition alleging he sustained bilateral upper extremity injuries as a result of the accident and alleging he was entitled to compensation.

Omaha Steel filed an answer, admitting the following:

[O]n August 14, 2006, [Cervantes] was an employee of . . . Omaha Steel . . . , and while employed on said date and while engaged in his duties of employment, he suffered an injury to both of his shoulders as a result of an accident arising out of and in the course of his employment . . . .

Omaha Steel also admitted that Cervantes "sustained a 12% impairment to his left upper extremity and an 18% impairment to his right upper extremity as a result of the aforementioned accident and injuries."

The parties subsequently stipulated in a pretrial order that "on August 14, 2006, [Cervantes] suffered injury by accident to his left arm and right arm, arising out of and in the scope of his employment."

Trial was held on January 17, 2012. The evidence showed that Cervantes was born in April 1958. He does not read, write, or speak English. He attended school through the sixth grade in Mexico, and his previous work experience included working as a field hand in Mexico and unskilled manual labor in the United States. His job at Omaha Steel involved picking up containers of food weighing greater than 10 pounds and required overhead lifting and reaching. The qualifications for Cervantes' position included the ability to work at a fast pace and lift up to 100 pounds.

Cervantes was injured on August 14, 2006, when he fell off a steel beam, suspended approximately 5 feet in the air. On August 18, Cervantes was diagnosed with a "SLAP II tear of the superior labrum" in the right shoulder. Surgery was recommended, which Cervantes elected not to undergo. Cervantes returned to work for Omaha Steel shortly after the accident, primarily using his left arm to perform his duties.

Cervantes sought a second opinion from Dr. Kirk Hutton, who also recommended surgery on Cervantes' right shoulder. On February 14, 2007, Hutton issued a report with his diagnosis of Cervantes' injuries, noting that if he did not have surgery, he had reached maximum medical improvement and sustained an 18-percent permanent partial impairment rating of his upper right extremity. Hutton set permanent work restrictions of "light work with lifting 20 pounds maximum and frequent lifting and/or carrying of objects weighing up to 10 pounds." He also recommended that Cervantes "keep work below shoulder level and close to the body." On July 25, Hutton modified the permanent restrictions to include only "sedentary work, 10 pounds lifting maximum."

On November 8, 2007, Cervantes saw Dr. D.M. Gammel for pain in his left shoulder. Gammel noted there was "no known specific injury," but also noted that Cervantes had been using his left shoulder exclusively, with increased pain and difficulty. Gammel later diagnosed the left shoulder injury as a "labral tear."

On December 5, 2007, Cervantes underwent an MRI on his left shoulder, which showed a "[t]ear of superior labrum extending anterior to posterior consistent with Type 2 SLAP tear of the glenoid labrum."

Following the MRI, on February 27, 2008, Hutton diagnosed Cervantes with "[b]ilateral shoulder SLAP lesions." Hutton prescribed "a sedentary work restriction keeping work below shoulder level and close to the body which would be permanent in nature."

In a report on April 4, 2008, Hutton noted the current diagnosis for the left shoulder was a "SLAP II tear." Hutton could not say with a reasonable degree of medical certainty that the tear was caused by Cervantes' work activities, but noted that the types of duties that Cervantes described certainly could have aggravated his condition causing it to become painful. He said Cervantes reported dealing with his right shoulder pain by overcompensating and using his left shoulder, subsequently developing pain. Hutton recommended surgery on the left shoulder, which Cervantes refused. Hutton stated that if Cervantes elected not to have surgery on his left shoulder, he had reached maximum medical improvement and had sustained a 12-percent permanent partial impairment to each upper extremity.

On December 26, 2008, Hutton completed a medical questionnaire, diagnosing Cervantes with a left shoulder "SLAP II lesion." He stated the lesion was aggravated by Cervantes' work activities with Omaha Steel. He assigned a 12-percent permanent impairment to Cervantes' left upper extremity "as a result of the work-related aggravation he sustained to a pre-existing left shoulder condition as a result of performing his work activities" for Omaha Steel.

Cervantes underwent vocational rehabilitation training consisting of an English as a second language program from June 8, 2008, through July 21, 2011. In September 2010, Ted Stricklett, the vocational rehabilitation consultant who worked with Cervantes on his program, sent an e-mail to counsel stating, "If consideration is given to [Cervantes'] work restrictions per Dr. Hutton (Sedentary work while keeping work below shoulder level and close to his body) and if I were to assume vocational rehabilitation is unsuccessful, then it would be my opinion that . . . Cervantes would be competitively unemployable."

On July 21, 2011, Stricklett wrote a report stating that Cervantes was unsuccessful in his vocational rehabilitation and that it was still his opinion that Cervantes was competitively unemployable.

On December 15, 2011, Cervantes underwent a psychological evaluation to determine if Cervantes was a malingerer. The evaluation determined Cervantes' intellectual functioning level to be "borderline to low average." He was also functionally illiterate and not able to communicate effectively without the aid of an interpreter. Scores on two tests of malingering did not indicate that he was malingering.

Following trial, the trial court entered an award, rejecting the parties' stipulation that Cervantes sustained bilateral shoulder injuries as a result of the August 14, 2006, work accident, and determined that Cervantes was not permanently totally disabled.

As previously stated, we reversed the trial court's rejection of the parties' stipulation and remanded the matter to the trial court instructing it to determine, in light of the parties' stipulation and the existing record, whether Cervantes is permanently totally disabled as a result of the accident. See *Cervantes v. Omaha Steel Castings Co.*, 20 Neb. App. 695, 831 N.W.2d 709 (2013).

On remand, the trial court found that Cervantes was not permanently and totally disabled as a result of the work accident. It stated:

> The medical evidence in the record indicates [Cervantes] sustained 18 percent impairment to his right shoulder as a result of the work injury, and 12 percent impairment to his left shoulder as a result of the work injury. . . . The medical records, and [Cervantes'] testimony at trial, also show that [Cervantes] did not sustain total loss or permanent total loss of use of both arms as a result of the work accident.

## ASSIGNMENT OF ERROR

Cervantes assigns that the trial court erred in finding that he was not permanently and totally disabled as a result of the multiple scheduled member injuries he sustained in the August 14, 2006, work accident.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013); Neb. Rev. Stat. § 48-185 (Cum. Supp. 2012).

On appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Visoso v. Cargill Meat Solutions, supra.* With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Id.*

Whether a plaintiff in a Nebraska workers' compensation case is totally and permanently disabled is a question of fact. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002).

## ANALYSIS

Cervantes assigns that the trial court was clearly wrong in finding on remand that he is not permanently totally disabled as a result of the multiple scheduled member injuries he sustained in the work accident. In determining Cervantes' disability on remand, the court was ordered to accept the parties' stipulation that Cervantes suffered injury to his left arm and right arm from an accident arising out of and in the scope of his employment. In addition, there is no dispute between the parties concerning the percent of disability to the two members injured as a result of the work accident on August 14, 2006. Omaha Steel admitted in its answer that Cervantes sustained a 12-percent partial impairment to his left upper extremity and an 18-percent partial impairment to his right upper extremity as a result of the work accident and injuries. In its order on remand, the court indicated that it accepted these permanent impairment ratings. The issue is the compensation which Cervantes is entitled to as a result of these injuries.

The language of Neb. Rev. Stat. § 48-121(3) (Reissue 2004), in effect at the time of Cervantes' work accident, stated:

In any case in which there is a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, but not amounting to total and permanent disability, compensation benefits shall be paid for the loss or loss of use of each such member or part thereof, with the periods of benefits to run consecutively. The total loss or permanent total loss of use of both . . . arms . . . in one accident, shall constitute total and permanent disability and be compensated for according to subdivision (1) of this section. In all other cases involving a loss or loss of use of . . . both arms . . . total and permanent disability shall be determined in accordance with the facts.

Since Cervantes has a permanent partial loss of use of both arms as a result of the injuries caused by the work accident, the issue is whether Cervantes is permanently totally disabled as a result of these injuries.

In its order on remand, the court found that Cervantes had not been rendered permanently totally disabled because "[Cervantes] did not sustain total loss or permanent total loss of use of both arms as a result of the work accident." However, total and permanent disability contemplates the inability of the worker to perform any work which he or she has the experience or capacity to perform. *Frauendorfer v. Lindsay Mfg. Co., supra*. It does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her mentality and attainments could do. *Id.*

In addition to the parties' stipulation, the evidence in this case shows that Cervantes was 55 years old at the time of the order on remand. He does not read, write, or speak English. His educational background is limited to attendance through the sixth grade in Mexico. His previous work experience includes working as a field hand in Mexico and unskilled manual labor in the United States. Cervantes testified that prior to working at Omaha Steel, he worked on a production line for another company where he picked up containers full of hotdogs. The job required him to lift more than 10 pounds and required overhead lifting and reaching.

Cervantes has been diagnosed with a SLAP II tear in both shoulders, and as a result of these injuries, he has sustained an 18-percent permanent impairment to his right shoulder and a 12-percent impairment to his left shoulder. Hutton has placed permanent physical restrictions on Cervantes that include sedentary work only, a 10-pound lifting maximum, and keeping work below shoulder level and close to his body. There are no contrary medical opinions.

Cervantes' job at Omaha Steel involved picking up containers of food weighing greater than 10 pounds and required overhead lifting and reaching. The qualifications for Cervantes' position included the ability to work at a fast pace and lift up to 100 pounds.

As evidenced by Cervantes' permanent work restrictions, he was no longer able to perform his job with Omaha Steel. He last worked for Omaha Steel on January 16, 2008, and had not worked for any other employer since he was terminated by Omaha Steel. Cervantes testified that he has not attempted to find any work since his last day at Omaha Steel because he did not believe he could find a job that he could do within his restrictions and qualifications.

He also testified that he had pain in his shoulders on a daily basis from the time he wakes up until the time he goes to bed. On a scale of 0 to 10, he rated the pain between a 6 and 7.

Cervantes underwent a psychological evaluation to determine if he was a malingerer. The evaluation determined Cervantes' intellectual functioning level to be "borderline to low average." The evaluation also determined that he was functionally illiterate and not able to communicate effectively without the aid of an interpreter. Scores on two tests of malingering did not indicate that he was malingering.

Cervantes underwent vocational rehabilitation training consisting of an English as a second language program from June 8, 2008, through July 21, 2011. Cervantes testified that the program was very difficult for him and that he sought assistance with his classwork through the use of tutors. Despite this assistance and his best effort to complete the program, he did not successfully complete it.

In September 2010, Stricklett, the vocational rehabilitation consultant, sent an e-mail to counsel indicating that based on Cervantes' work restrictions and assuming vocational rehabilitation is unsuccessful, it was his opinion that Cervantes would be competitively unemployable. On July 21, 2011, Stricklett wrote a report stating that Cervantes was unsuccessful in his vocational rehabilitation and that it was his opinion that Cervantes was competitively unemployable.

The opinion of a court-appointed vocational rehabilitation expert regarding loss of earning power has a rebuttable presumption of validity. *Moyera v. Quality Pork Internat.*, 284 Neb. 963, 825 N.W.2d 409 (2013). Stricklett's opinion was entitled to a rebuttable presumption of validity and there was no competent sufficient evidence presented to rebut the presumption.

Cervantes sustained two scheduled member injuries in one accident, resulting in permanent physical restrictions. Cervantes failed the vocational rehabilitation program, and based on the vocational rehabilitation consultant, he has been rendered competitively unemployable. Based on our review of the record, we are convinced that the evidence establishes as a matter of law that Cervantes is permanently totally disabled as a result of the injuries he sustained in the accident on August 14, 2006. We conclude that the trial court's finding to the contrary is clearly wrong.

We also note that at oral argument, Omaha Steel suggested that Cervantes is not entitled to permanent total disability benefits because he was an "illegal alien" at the time of trial and may not be lawfully employed because of his illegal status. The parties stipulated prior to the start of trial that Cervantes was an "illegal alien" at the time he participated in vocational rehabilitation and at the time of trial. Omaha Steel relied on *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005), which held that the claimant, who was an illegal immigrant, was not entitled to vocational rehabilitation benefits. However, in *Moyera v. Quality Pork Internat., supra*, the Nebraska Supreme Court held that its decision in *Ortiz* did not preclude an award of benefits to an undocumented worker for permanent disability. The court rejected the employer's argument that the claimant was not entitled to benefits for permanent indemnity because of his illegal status and allowed permanent indemnity even though the undocumented worker remained in the United States. Accordingly, Omaha Steel's contention that Cervantes is not entitled to benefits for permanent total disability because of his status as an "illegal alien" is without merit.

## CONCLUSION

We reverse the court's finding in its order on remand that Cervantes is not permanently totally disabled and remand the cause to the trial court with directions to enter an award in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.